**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **DEIDRE MUMFORD-JONES[1]** | ) | **CASE NO. 1:12CV0438** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MAGISTRATE JUDGE GREG WHITE** |
| **v.** | ) | |
| | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | **MEMORANDUM OPINION & ORDER** |

Plaintiff Deidre Mumford-Jones ("Mumford-Jones") challenges the final decision of the

Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying her claim for a

Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the

Social Security Act ("Act"), 42 U.S.C. §§ 416(i) & 423 *et seq*.  This matter is before the Court

pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28

U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is affirmed.

**I.  Procedural History**

On October 17, 2007, Mumford-Jones filed an application for DIB and POD alleging a

disability onset date of September 24, 2002, and claiming that she was disabled due to a

herniated disk, neck strain, and, left leg and right wrist problems.  (Tr. 164.)  Her application was

denied both initially and upon reconsideration.  Mumford-Jones timely requested an

administrative hearing.

On April 13, 2010, an Administrative Law Judge ("ALJ") held a hearing during which

Mumford-Jones, represented by counsel, testified.[2]  On May 21, 2010, the ALJ found Mumford-

---

[1]Plaintiff's name is also spelled "Deidra" throughout the record.

[2]A vocational expert was requested to be at the hearing, but was unavailable.  (Tr. 34.)

Jones was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II. Evidence

### Personal and Vocational Evidence

Age 47 at the time of her administrative hearing, Mumford-Jones is a "younger" person under social security regulations. *See* 20 C.F.R. § 404.1563. (Tr. 23.) She has a high school education and past relevant work as a bus driver and an assistant loan officer. (Tr. 22-23.)

### Medical Evidence

After suffering a work-related injury on September 24, 2002, she was treated and released at St. Vincent Charity Hospital with a diagnosis of cervical, thoracic, and lumbar strain and a sprain of the right wrist. (Tr. 240, 256, 279, 280.) She underwent therapy from September 26, 2002 to January 8, 2003. (Tr. 240-278.)

Treating physician, Audley M. Mackel, III, M.D., in January, 2003, assessed lumbar, cervical, thoracic, and wrist sprain and strain after a back examination revealed "flexion of the lumbar spine to 30-40° with mild pain. Extension is 10-15°, rotation 10-15°." (Tr. 310-311.) He further recommended a cervical spine MRI to "rule out herniated nucleus pulposus. . ." *Id*. He also recommended Mumford-Jones continue her medications (Ultracet, Motrin, and Tylenol with codeine) as well as physical therapy. *Id*.

On February 27, 2003, Dr. Mackel reported that Mumford-Jones continued to complain of "some pain about the neck and shoulder area." (Tr. 309.) Back examination revealed "flexion of the lumbar spine to 30-40°, extension 10°, side-bending is 15-20°." (Tr. 309.) She was using prescribed medications, but had not yet begun physical therapy. *Id*.

On March 11, 2003, Mumford-Jones underwent a Magnetic Resonance Imaging ("MRI") of her lumbar spine, showing L4-5 level disc dehydration with a subtle asymmetric left paramedian herniation impinging the epidural fat of the left lateral recess and base of the left foramen. (Tr. 313.)

Between April, 2003 and January 10, 2005, Dr. Mackel treated Mumford-Jones on

2

numerous occasions.  (Tr. 299-308.)  Dr. Mackel's notes indicate that her pain persisted throughout this time period.  *Id.*  In August, 2003, Dr. Mackel noted that she began using a TENS unit in physical therapy, which helped to decrease the pain.  (Tr. 305.)  In January, 2005, upon examination, Dr. Mackel found "[f]lexion of the lumber spine is 50-60°, extension 10°, pain is noted primarily with flexion about the lower back and lumbar spine area.  Rotation is 10-15°." (Tr. 299.)  He further noted that she was back to light duty work.  *Id.*  Dr. Mackel recommended that she increase her activity by walking and doing soft tissue stretching.  (Tr. 299.)

Mumford-Jones attended physical therapy from March 29, 2004 through May 25, 2004. (Tr. 355-396.)  On April 4, 2004, the physical therapist reported that Mumford-Jones arrived "energetic and with no [complaints of] pain."  (Tr. 380.)  On April 12, 2004, she reported that she was in pain after sitting for a prolonged period in her car, and standing while cooking.  (Tr. 382.)  On April 16, 2004, Mumford-Jones reported improvement, but with some lumbar pain remaining.  (Tr. 377.)  At the time of the appointment, however, she rated her pain at "0" on a scale of 0 to 10.  *Id.*  On April 19, 2004, she reported that she had pain over the weekend secondary to sitting through four of her son's basketball tournaments.  (Tr. 375.)  On April 23, 2004, she reported that she did a lot of housework and driving and her back "gave out," causing spasms and stiffness.  (Tr. 371.)

Timothy Morley, D.O., on behalf of the Workers' Compensation Bureau, examined Mumford-Jones on November 22, 2005, finding her range of motion through the cervical spine restricted and bilateral tenderness throughout the thoracic area.  (Tr. 425.)  Dr. Morley prescribed a Lidoderm patch and Motrin for pain, as well as further physical therapy.  *Id.*

On March 1, 2006, Gordon Zellers, M.D., performed an examination for the Workers' Compensation Bureau.  (Tr. 316-322.)  He concluded that she could not return to her job as a bus driver.  (Tr. 321.)  He further reported that she would be limited to the following physical limitations:

(1) Sedentary to modified light duty labor activities only.

(2) Ten pound maximum lifting limit on an occasional, as tolerated basis.

(3) No prolonged sitting, standing, or ambulating.

3

(4) This patient must be permitted to change body positions on a p.r.n. basis.

(5) No activities requiring normal cervical spine range of motion capabilities.

(6) Twisting/turning activities on an as-tolerated basis.

(7) Bending activities on an occasional, as tolerated basis.

(8) No squatting activities.

(9) No climbing activities.

(10) No above-ground work should that environment pose a threat to the patient's safety.

(11) No repetitive activities involving the lower extremities.

(12) This patient should not be exposed to excessive vibratory stimuli.

(13) This patient should be permitted to continue to use her low back brace, TENS unit, and cane on a p.r.n. basis.

(14) This patient should not be permitted to perform safety-sensitive work activities while under the influence of sedative type medications.

(Tr. 321-322.)

On December 19, 2006, Steven Sanford, M.D., on behalf of the Workers' Compensation Bureau, examined Mumford-Jones. (Tr. 227-232.) Based upon the exam and a review of the medical history, he reported that she could not return to her past work as a bus driver. (Tr. 231.) Further, he opined that claimant's functional limitations at the time of the examination included no lifting of greater than 20 pounds, no repeated bending or twisting at the waist, no floor to waist lifting, and no sitting or standing for greater than one to two hours at a time. (Tr. 231.)

On December 21, 2007, William Bolz, M.D., a state agency physician, reviewed Mumford-Jones' medical records through September 30, 2005, and opined that she was capable of performing a full range of sedentary work during the relevant time period. (Tr. 403-410.) Specifically, Dr. Bolz found Mumford-Jones limited only as follows: she could stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours, occasionally lift and/or carry about 10 pounds, frequently lift and/or carry less than 10 pounds. (Tr. 403-408.)

### *Hearing Testimony*

At the hearing, Mumford-Jones testified to the following:

4

- She first became disabled on September 24, 2002, when she was injured while driving a school bus.  (Tr. 39.)

- She filed a workers' compensation claim and received benefits.  (Tr. 40.)  When she reached maximum medical improvement, the benefits stopped.  (Tr. 51-52.)  She knew the benefits stopped at least two years prior to the hearing, but did not remember the exact date.  (Tr. 40.)

- In early 2005, she worked as a loan officer for about four or five months, until the spring of 2005.[3]  (Tr. 45.)  She quit due to the pain she experienced sitting at the desk.  (Tr. 46.)  Further, she was not allowed to take breaks as she needed to be near the phone.  *Id.*  Additionally, she earned only about $200 every two weeks and received no commissions.  (Tr. 53-54.)

- She obtained the loan officer position through a rehabilitation program in order to get off workers' compensation.  (Tr. 52.)

- From 2002 until 2005, she was unable to perform activities around the house.  (Tr. 47.)  Her family helped clean and cook.  *Id.*  Also, during this time period, she estimated that she could sit for thirty to forty-five minutes at a time, stand about fifteen to twenty minutes, and walk about ten minutes.  (Tr. 49.)

- During the same time period, she was using a back brace and a TENS unit as well as attending physical therapy sessions.  (Tr. 50.)  The therapy helped during the session, but the pain would return.  *Id.*  She was unable to drive because the pain medication caused her to lose focus.  (Tr. 51.)

- Approximately two years later, she tried applying for receptionist-type jobs, but was unable to find one.  (Tr. 54-55.)

- She applied for disability in October, 2007, because she was experiencing increasing pain.  (Tr. 42.)

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315 & 404.1505(a).[4]

---

[3]Although the ALJ indicated at the hearing that the loan officer position ended in December, 2005 (Tr. 46), the record supports Mumford-Jones' statement that she worked as such until March 31, 2005 (Tr. 318), and Dr. Sanford's notes indicate she worked until April, 2005.  (Tr. 228.)

[4]The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Mumford-Jones was insured on her alleged disability onset date, September 24, 2002, and remained insured through September 30, 2005.  (Tr. 17, 19.)  Therefore, in order to be entitled to POD and DIB, Mumford-Jones must establish a continuous twelve month period of disability commencing between these dates.  Any discontinuity in the twelve month period precludes an entitlement to benefits.  *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

### IV.  Summary of Commissioner's Decision

The ALJ found Mumford-Jones established a medically determinable, severe impairment, due to degenerative disc disease; however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Mumford-Jones was found incapable of performing her past work activities, but was determined to have a Residual Functional Capacity ("RFC") for the full range of sedentary work.  The ALJ then used the Medical Vocational Guidelines ("the grid") to determine that Mumford-Jones was not disabled.

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed

---

impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.  *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996);

7

*accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  Analysis

Mumford-Jones claims the ALJ did not properly evaluate her pain complaints.  (Doc. No. 16 at 8-12.)

In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition.  20 C.F.R. § 404.1529; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 686 (6th Cir. 1992) (noting that "this court has previously held that subjective complaints of pain may support a claim for disability"). It is well settled that pain alone, if caused by a medical impairment, may be severe enough to constitute a disability.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating these symptoms.  First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment. Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms." SSR 96-7p.  Essentially, the same test applies where the alleged symptom is pain, as the Commissioner must (1) examine whether the objective medical evidence supports a finding of an underlying medical condition, and (2) whether the objective medical evidence confirms the alleged severity of pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.  *See Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

If the claims are not substantiated by the medical record, the ALJ must make a credibility determination of the individual's statements based on the entire case record.  *Id*.  Credibility determinations regarding a claimant's subjective complaints rest with the ALJ.  *See Siterlet v.*

8

*Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).  The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly.  *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).  Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight."  SSR 96-7p, Purpose section; *see also Felisky,* 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"); *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005) (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.")

The ALJ found Mumford-Jones' statements regarding her limitations not credible as follows:

> In applications, the claimant alleged disability because of herniated discs, neck strain, left leg problems, and right wrist problems. She said her impairments limited her ability to sit, stand, lift, and carry (Exhibit 3E). During the hearing, the claimant testified that she suffered a work injury while driving a bus in 2002 that prevents her from working. She said that prior to her date last insured she could sit no more than 45 minutes at a time. She stated she could not walk very far at all and could only stand for about 15 minutes.

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

> In terms of the claimant's alleged pain, the evidence establishes that she was injured in September 2002 while working as a bus driver. Following her injury, she complained of wrist, neck, shoulder, and back pain. Initial diagnoses revealed nothing worse than a sprain (Exhibit IF).

> Treating physician Audley Mackel, M.D., examined the claimant in January 2003 and noted tightness and spasm in the cervical muscles. There was pain with extension and flexion of the neck but motor function was intact in the shoulders and arms. Dr. Mackel noted only "slight" weakness with range of motion testing (Exhibit 5F at 16). He prescribed physical therapy, Motrin for pain, and a TENS unit. Neurological examinations during this period were within normal limits (Exhibit IF at 2).

9

A doctor who reviewed the claimant's injury for the Bureau of Workers' Compensation in March 2004 said that the claimant's degenerative disc disease was not related to her work injury (Exhibit IF at 2). An MRI of the claimant's lumbar spine dated March 2003 revealed L4-5 disc dehydration with subtle asymmetric left paramedian herniation impinging on the left lateral recess and base of the left foramen (Exhibit SF at 19). In April 2004, the claimant denied any indication of pain whatsoever (Exhibit 7F at 58). During physical therapy in May 2004, the claimant was able to perform a wide variety of exercised [sic] including seated rows, bicep curls, hamstring curls, tricep extensions, leg presses, pelvic tilts, and trunk rotations while seated (Exhibit 7F at 34).

The record establishes that the claimant was able to attend land and water physical therapy classes and join a gym following her injury (Exhibit 7F at 18). She was able to drive a car, perform housework, and cook (Exhibit 7F at 44, 49, 60). She attended her son's basketball tournaments (Exhibit 7F at 53). The claimant's daily activities, especially when viewed in light of medical noncompliance discussed below, do not support a finding of disability. Physical therapy records show that she missed numerous appointments (Exhibit 3F at 15,28,31,36,40, 7F at 39).

The claimant admitted at the hearing, and the evidence establishes, that physical therapy she received following her accident decreased her symptoms (Exhibit 14F). This factor, in light of the fairly benign objective medical evidence, supports the findings within.

The claimant worked after the alleged onset date. She worked from September 2005 through December 2005 as a loan officer assistant (Exhibits IE, 2E, 4E). A Bureau of Workers' Compensation report from 2006 shows that the claimant worked as a loan officer assistant in 2004 but quit to take a higher-paying job (Exhibit BE). The claimant admitted during the hearing that she continued to look for work after she left her loan officer position.

The fact that the claimant worked after her alleged onset date, was noncompliant with physical therapy, and was able to perform the daily activities described above is strong evidence supporting a finding of "not disabled" prior to the date last insured.

(Tr. 20-21.)

The ALJ noted that, despite Mumford-Jones' degenerative disc disease, the neurological examinations during the relevant time period, September 24, 2002 through September 30, 2005, were within normal limits. (Tr. 21.) Nonetheless, he found the degenerative disc disease to be a severe impairment. Pursuant to the regulations, he then conducted a credibility assessment following SSR 96-7p, which requires the ALJ to consider the following:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual

10

takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p at *3.

Mumford-Jones contends that the ALJ made unjustified assumptions in his assessment of her pain allegations.  (Doc. No. 16 at 11.)  Specifically, she contends that the ALJ erroneously inferred that she was able to drive to and from her therapy appointments and, therefore, her pain could not be as severe as reported.  *Id.*

The ALJ addressed the factors listed in SSR 96-7p and found that Mumford-Jones was able to perform a variety of daily activities during the relevant time period, including driving, performing housework, and cooking.  The ALJ also found that she was consistently treated with conservative measures such as medications and physical therapy which relieved her back pain.  Furthermore, during the relevant time period, no physician recommended surgery for her back problems.  As such, substantial evidence supports the ALJ's finding that Mumford-Jones' pain complaints were not fully credible.

### RFC Analysis

Mumford-Jones contends that the ALJ ignored her treating physicians' opinions regarding her ability to work.  (Doc. No. 16 at 12-15.)  Furthermore, she contends that a proper analysis of her pain and the Workers' Compensation examiners and the State Agency physician opinions would not support the RFC finding that she was capable of performing the full range of sedentary work.  *Id.*

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record."  *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20

11

C.F.R. § 404.1527(d)(2)).  "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.)  Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  *Blakley*, 581 F.3d at 408.[5]

Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence.  *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).

The ALJ reviewed the opinion evidence as follows:

As for the opinion evidence, State Agency reviewing physician William Bolz, M.D., offered an opinion on the claimant's residual functional capacity dated December 2007 and said the claimant [could] lift, carry, push, and pull ten pounds occasionally and less than ten pounds frequently.  Dr. Bolz said the claimant could sit for six hours and stand and/or walk for six hours in a normal workday. He offered no other opinions (Exhibit 9F). With one exception, Dr. Bolz's opinions are given great weight and incorporated into the findings within because they are consistent with and supported by the evidence of record. His opinion on standing and walking is given no weight because evidence received at the hearing level shows that the claimant has greater limitations in those areas than Dr. Bolz assessed.

---

[5]  Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

Dr. Steve Sanford, M.D., reviewed the claimant's case for the Bureau of Workers' Compensation in December 2006 and said she should avoid prolonged sitting or standing for more than one-to-two hours at a time, avoid lifting greater than 20 pounds, and avoid repeated waist bending or twisting (Exhibit IF). This opinion is given little weight in that it was offered well after the claimant's date last insured. However, it does support a finding of a sedentary residual functional capacity for the period prior to her date last insured, as there was little if any change in the claimant's condition from the expiration of her insured status date to when Dr. Sanford offered his opinion.

Orthopedist Gregory Hill, D.O., examined the claimant on behalf of the Bureau of Workers' Compensation in November 2007 and said she could twist, turn, and reach below the knee occasionally. He said she should refrain from bending, squatting, kneeling, standing, and walking. He felt she could lift 20 pounds occasionally and ten pounds frequently. He concluded that she was capable of "sedentary activities" (Exhibit 2F). This opinion, like Dr. Sanford's, was offered well after the date last insured but strongly suggests the claimant was capable of at least sedentary work prior to that time.

The claimant had certain limitations prior to her date last insured because of her degenerative disc disease. However, her limitations did not preclude all levels of basic work-related activities.  There is nothing in the record that justifies any further reduction in the residual functional capacity contained herein prior to the date last insured.

(Tr. 22.)

The ALJ found Mumford-Jones to be capable of the full range of sedentary work[6] as

follows:

After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a).  Specifically, she could lift, carry, push and pull ten pounds occasionally and five pounds frequently. She could sit for six hours and stand and/or walk for two hours in a normal workday. No other limitations are establishes [sic] prior to the date last insured.

(Tr. 20.)

In this case, the record is devoid of any physician opinions regarding Mumford-Jones'

physical functional capacity or limitations during the relevant time period, 2002-2005.  Dr.

Mackel's treatment notes indicate that she had a limited range of motion in her lumbar and

---

[6]Sedentary work is defined as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

thoracic areas, but he does not offer restrictions in any work area, even after diagnosing a L4-5 disc herniation with thoracic and lumbar sprain.  (Tr. 299.)  Indeed, he found that she was able to return to work.

Mumford-Jones asserts that the ALJ ignored subsequent medical opinions finding that she was more restricted.  Specifically, she contends that the ALJ ignored Dr. Sanford's opinion that she was unable to tolerate prolonged sitting, standing and walking – no more than one to two hours; and, she must avoid floor to waist lifting and repeated bending and twisting.  (Tr. 227-232.)  These opinions, however, addressed Mumford-Jones' functional capabilities after the September 30, 2005 insured date, and, therefore, were properly attributed little weight.  The ALJ did suggest that Dr. Sanford's opinion would support a sedentary RFC for the relevant time period because little had changed in Mumford-Jones' condition since 2005.

Mumford-Jones further contends that the ALJ ignored Dr. Zellers' opinion dated March 1, 2006.  (Doc. No. 16 at 14.)  Dr. Zeller did find Mumford-Jones to be restricted in certain exertional areas, such as bending and twisting.  Nonetheless, Dr. Zellers' opinion was also beyond the relevant insured date.

The Sixth Circuit has observed that "[e]vidence of disability obtained after the expiration of insured status is generally of little probative value."  *Strong v. Soc. Sec. Admin*., 88 Fed. App'x 841, 845 (6th Cir. 2004); *Walton v. Astrue*, 773 F.Supp.2d 742, 750 (N.D. Ohio 2011).  A claimant must provide medical evidence of her impairments "during the time you say that [she is] disabled."  20 C.F.R. § 404.1512(c).  The crucial date in a social security case is the "date [that] claimant's insured status expired."  *Barnett v. Sec'y of Health & Human Servs*., 1987 WL 36614, at *3 (6th Cir. 1987).  Medical evidence dated after a claimant's expiration of insured status is only relevant to a disability determination where the evidence "relates back" to the claimant's limitations prior to the date last insured.  *Id*.

The ALJ, however, did rely, in part, upon an opinion of State Agency Reviewing physician Dr. Bolz, whose assessment was based upon records prior to the date last insured, September 30, 2005.  (Tr. 403-410.)  Dr. Bolz found Mumford-Jones could stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours; occasionally lift and/or carry about 10 pounds; frequently

14

lift and/or carry less than 10 pounds and no other restrictions.  (Tr. 403-408.)  Dr. Bolz's opinion was credited, except the ALJ provided for greater restrictions on Mumford-Jones' ability to stand and walk.  (Tr. 22.)

The ALJ committed no error in evaluating, and considering evidence in light of claimant's date last insured.  Nonetheless, as acknowledged by Mumford-Jones, the opinions offered generally support her ability to perform sedentary limitations.  (Doc. No. 16 at 12.)  Moreover, Mumford-Jones' argument that these opinions together with her pain eroded her capacity to work is without merit, as the Court has already found that the ALJ's pain and credibility assessment was proper.

Finally, Mumford-Jones contends that the ALJ erred when he failed to obtain the opinion of a vocational expert, in light of the claimant's alleged pain-related limitations.  (Doc. No. 16 at 14.)  As Mumford-Jones was properly found capable of performing a full range of sedentary work, the ALJ relied on the Grid rules 201.21 and 201.28 to find her not disabled.[7]  Vocational expert testimony was not necessary.  *See* 20 CFR §§ 404.1566(e), 1569, 1569a (the ALJ should consult a vocational expert when a grid rule would direct a conclusion of "not disabled" **and** the claimant has non-exertional limitations).

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision of the Commissioner is affirmed.

IT IS SO ORDERED.

s/ Greg White
United States Magistrate Judge

Date:    December 11, 2012

---

[7]Grid rule 201.28 provides that a younger individual between the ages of 18-44, with a high school education, and skilled or semiskilled skills that are not transferable is not disabled. Grid rule 201.21 is identical, except for an individual between the ages of 45-49.

15